UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BRUCE FARRAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:15 CV 116 ACL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Bruce Farrar brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Farrar alleged that he was disabled because of depression, broken chest bones, panic disorder, back injury, anxiety, torn right rotator cuff, "ankles and knees bad," and chronic joint pain. (Tr. 258.)

An Administrative Law Judge (ALJ) found that, despite Farrar's multiple severe physical and mental impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

## I. Procedural History

Farrar protectively filed his application for DIB on March 1, 2012, and his application for SSI on March 6, 2012. (Tr. 137-38.) His claims were denied initially. (Tr. 147-53.) Following an administrative hearing, Farrar's claims were denied in a written opinion by an ALJ, dated February 20, 2014. (Tr. 10-25.) Farrar then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 15, 2015. (Tr. 6, 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Farrar first claims that the ALJ erred "by failing to weigh the opinion of the treating physician, Dr. Arshad." (Doc. 12 at 8.) Farrar next argues that the ALJ erred by "failing to include limitations in Farrar's ability to interact with co-workers or supervisors, despite finding that Farrar would be limited in this area." *Id.* at 12.

## II. The ALJ's Determination

The ALJ found that Farrar has not engaged in substantial gainful activity since April 1, 2011, the alleged onset date. (Tr. 12.)

In addition, the ALJ concluded that Farrar had the following severe impairments: degenerative disc disease and degenerative joint disease of the spinal areas, a history of vertebral fractures, scoliosis, right shoulder degenerative joint disease and supraspinatus/infraspinatus tendinosis with degenerative changes including intra-articular biceps tendinosis and degeneration/tear of the right glenoid labrum, seizures without Xanax,[1] arthritis, a history of a left arm fracture, a history of a left ankle fracture, bilateral carpal tunnel syndrome, gastroesophageal

---

[1] Xanax is indicated for the treatment of anxiety and panic disorders. *See* WebMD, http://www.webmd.com/drugs (last visited September 6, 2016).

reflux disease, hypertension, obesity, anxiety with panic, agoraphobia, depression, and bipolar disorder. (Tr. 13.) The ALJ found that Farrar did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Farrar's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that it also includes these nonexertional capabilities and limitations: no climbing of ropes, ladders or scaffolds; occasionally climbing ramps and stairs and stooping, kneeling, crouching, and crawling; occasional overhead reaching with the dominant right upper extremity, frequent (but not constant) handling and fingering using the upper extremities; no exposure to extreme heat, cold, or humidity; no whole body vibrations; no operation of motor vehicles; no sampling or tasting of foods or beverages so as not to interfere with a recommended diet; no working around uncontrolled access to alcohol or controlled substances; not having exposure to hazards of unprotected heights or dangerous moving machinery; doing tasks and instructions with an SVP of 2 or less and ones requiring a reduced stress environment, defined as having to make occasional commensurate decisions and no more than occasional changes in routine in a normal work setting; and having occasional superficial interaction with the general public, away from crowds. Light work involves standing and walking at least 6 hours out of an 8-hour day, and lifting, carrying, pushing and pulling no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 CFR 404.1567(b) and 416.967(b).

(Tr. 15-16.)

In determining Farrar's RFC, the ALJ discussed the opinions of treating physician Dr. Abdullah Arshad, M.D.; psychologist Price Gholsen, Psy.D.; and psychiatrist Jim Pang, M.D. (Tr. 19, 21.) The ALJ also found that Farrar's subjective allegations were not entirely credible. (Tr. 22.)

The ALJ further found that Farrar was unable to perform any past relevant work. (Tr. 23.)

The ALJ noted that a vocational expert testified that Farrar could perform jobs existing in significant numbers in the national economy, such as semi-conductor bonder, table worker, bench preparer, call-out operators, charge account clerk, and telephone quotation clerk. (Tr. 24.) The ALJ therefore concluded that Farrar has not been under a disability, as defined in the Social Security Act, from April 1, 2011, through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on March 1, 2012, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on June 15, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 25.)

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is

responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1),

416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

### IV.A. Opinion of Dr. Arshad

Farrar argues that the ALJ erred by failing to weigh the opinion of treating physician Dr. Arshad. Farrar contends that, had the ALJ assigned controlling weight to this opinion, he would have found Farrar disabled.

When evaluating opinion evidence, the ALJ is required by the Regulations to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 416.927(e)(2)(ii). The Regulations require that more

weight be given to the opinions of treating physicians than other sources. 20 C.F.R. § 416.927(c)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.; see also Forehand v. Barnhart,* 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* However, a treating physician's opinion is not automatically controlling. *Grable v. Colvin,* 770 F.3d 1196, 1201 (8th Cir. 2014). "An ALJ may 'discount or disregard a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (quoting *Smith v. Colvin,* 756 F.3d 621, 625–26 (8th Cir. 2014)). In addition, a medical source's opinion that an applicant is unable to work involves an issue reserved for the Commissioner and is not the type of opinion that the Commissioner must credit. *Ellis v. Barnhart,* 392 F.3d 988, 994–95 (8th Cir. 2005).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the treating physician provides support for her findings, whether other evidence in the record is consistent with the treating physician's findings, and the treating

physician's area of specialty. 20 C.F.R. § 416.927(c). The Regulations further provide that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. § 416.927(c)(2).

In this case, the ALJ discussed Dr. Arshad's treatment notes and his opinions in various places throughout his written decision. The ALJ noted that Dr. Arshad has been Farrar's "main treating physician in recent years." (Tr. 18.) The ALJ noted that Dr. Arshad prescribed and refilled medications for back pain, muscle spasms, and anxiety on February 8, 2010, and April 16, 2010, prior to Farrar's alleged onset of disability date. (Tr. 18, 585-86.) The ALJ stated that Dr. Arshad refilled medications for Farrar's back pain, muscle spasms, right shoulder pain, hypertension, and a sebaceous cyst in March 2012. (Tr. 18, 584.) Dr. Arshad added diagnoses of gastritis and insomnia in April 2012. (Tr. 18, 675.) On August 22, 2012, Farrar reported to Dr. Arshad that he had dropped his Xanax in the toilet. (Tr. 18, 668.)

The ALJ noted that, on September 28, 2012, Dr. Arshad completed a form questionnaire submitted to him by Farrar's attorney, which was "considerably more restrictive" than the RFC formulated by the ALJ. (Tr. 19, 754-55.) Specifically, Dr. Arshad found that Farrar could frequently lift or carry twenty pounds, and occasionally lift or carry twenty-five pounds; stand or walk continuously for one hour, stand or walk a total of three hours in an eight-hour day; sit continuously for one hour, sit three hours out of an eight-hour day; can occasionally climb, stoop, kneel, crouch, crawl, reach, and handle; should avoid moderate exposure to extreme temperatures, dust or fumes, vibration, hazards, and heights; and must lie down or recline three times during an eight-hour workday for thirty minutes. (Tr. 754-55.)

The ALJ stated that, after he rendered his opinion, Dr. Arshad continued to authorize medication refills for Farrar after about five outpatient visits between October 2012 and July 2013.

(Tr. 19, 790, 786, 864, 863, 862.)  Dr. Arshad added a diagnosis of gastroesophageal reflux disease on April 30, 2013 (Tr. 863), and hyperlipidemia on July 1, 2013 (Tr. 862).  (Tr. 19.)

The ALJ summarized that Farrar has some degenerative changes of the lumbosacral, cervical, and thoracic spines, as shown on imaging, but they are not extensive changes.  *Id*.  He stated that there is evidence of a very old fracture of the left arm, but none of the left ankle or of either knee.  *Id.*  The ALJ also noted that there are fairly minor degenerative changes of the right shoulder.  *Id.*  As to Dr. Arshad's opinion, the ALJ stated that there is "no musculoskeletal impairment that justifies the rather extensive limitations that Dr. Arshad placed on the claimant in Exhibit 17F (Medical Source Statement-Physical), and his own treatment notes of the claimant do not show much in the way of acute distress, only lists of diagnoses based mainly on subjective complaints, and authorizations for medication refills."  (Tr. 19.)  On the next page of his decision, the ALJ acknowledged that the opinion of a "treating physician, such as Dr. Arshad, is normally entitled to great weight as a matter of regulatory law."  (Tr. 20.)  The ALJ then cited the regulations and case law that govern the evaluation of treating physician opinions.  *Id.*

The undersigned finds that the ALJ erred in evaluating the opinion of Dr. Arshad.  First, although the ALJ implied he was discrediting Dr. Arshad's opinion, he did not specify the weight that he assigned to the opinion.  The relevant regulations require that the ALJ indicate the weight assigned to medical opinions.  20 C.F.R. § 416.927(e)(2)(ii).  Defendant contends that the ALJ's failure to indicate the weight assigned to this opinion was harmless, as the ALJ provided adequate reasons for discrediting the opinion.  The undersigned disagrees for the reasons discussed below.

As support for his decision to discredit Dr. Arshad's opinion, the ALJ first stated that Farrar does not have a musculoskeletal impairment that justifies the limitations found by Dr. Arshad.  (Tr. 19.)  The ALJ then cited the following findings from imaging studies: a September

2012 MRI scan of the lumbar spine revealed mild chronic anterior wedge deformities and a small central disc protrusion (Tr. 19, 750); an MRI of the thoracic spine Farrar underwent on the same day showed mild kyphosis and mild degenerative spondylosis with a small central disc protrusion (Tr. 19, 752); bone density studies of the lumbar spine and left hip from January 2013 were negative (Tr. 19, 795-96); a January 2013 cervical spine MRI revealed mild disc bulging with no spinal canal stenosis (Tr. 19, 798); a right shoulder MRI showed "fairly minor degenerative changes" (Tr. 19, 800), and nerve conduction studies showed mild to moderate carpal tunnel syndrome (Tr. 19, 819). These findings are not inconsistent with Dr. Arshad's opinion. Rather, the imaging study findings demonstrate that an objective basis exists for Farrar's pain complaints. Although some of the findings were described as "mild," it is reasonable to believe that, in combination, they could result in the limitations found by Dr. Arshad. Farrar received regular treatment for his various complaints, including monthly treatment at a pain clinic from May 2012 through October 2013. (Tr. 725-850.) Thus, the ALJ's finding that Farrar does not have a musculoskeletal impairment that justifies the limitations found by Dr. Arshad is not supported by the record.

The ALJ next found that Dr. Arshad's opinions are not supported by his own treatment notes. He stated that Dr. Arshad's treatment notes "do not show much in the way of acute distress, only lists of diagnoses based mainly on subjective complaints, and authorizations for medication refills." (Tr. 19.) A review of Dr. Arshad's treatment notes, however, reveal Dr. Arshad consistently noted abnormalities on examination. In March 22, 2012, Farrar complained of pain in his back and joints. (Tr. 584.) Upon musculoskeletal examination, Dr. Arshad noted L5/S1 tenderness, pain on flexion of the neck and back, and right shoulder pain on flexion and abduction. *Id.* Dr. Arshad diagnosed Farrar with back pain, muscle spasms, right shoulder

rotator cuff syndrome, hypertension, and a sebaceous cyst, and prescribed medications for these conditions. *Id.* In May 2012, Dr. Arshad noted L5/S1 tenderness on examination. (Tr. 674.) Dr. Arshad refilled Farrar's medications. *Id.* Farrar complained of pain in the back and joints and muscle spasms on December 19, 2012. (Tr. 787.) Dr. Arshad noted L5/S1 tenderness, and pain on flexion of the back and back. (Tr. 786.) Dr. Arshad diagnosed Farrar with back pain and muscle spasms and refilled his medications. *Id.* On February 11, 2013, Farrar complained of anxiety and "a lot of pain in the shoulders and back." (Tr. 784.) Dr. Arshad again noted L5/S1 tenderness on examination. *Id.* Dr. Arshad diagnosed Farrar with back pain, anxiety disorder, lumbar disc disease, cervical disc disease, and right shoulder severe osteoarthritis, and refilled Farrar's medications, which included Tramadol[2] for pain. *Id.* On April 30, 2013, Farrar was nervous and requested Xanax. (Tr. 863.) Dr. Arshad explained to Farrar that he could not prescribe Xanax, and suggested that he see his psychiatrist. *Id.* Dr. Arshad noted L5/S1 tenderness on musculoskeletal examination. *Id.* In July 2013, Farrar complained of back pain. (Tr. 862.) Dr. Arshad noted L5/S1 tenderness, and refilled Farrar's prescriptions. *Id.* Dr. Arshad's treatment notes reveal that he performed examinations at every visit and consistently noted lower back tenderness. He did not merely rely on Farrar's subjective complaints as the ALJ suggests. The ALJ's finding that Dr. Arshad's opinion is inconsistent with his own treatment notes is not, therefore, supported by the record.

Further, there is no other opinion evidence in the record contradicting Dr. Arshad's findings. Dr. Arshad is the only physician, examining or non-examining, to express an opinion regarding Farrar's work-related limitations. Dr. Arshad had been Farrar's treating physician since 2008. (Tr. 874.) Thus, the ALJ erred in discrediting Dr. Arshad's opinion.

---

[2] Tramadol is indicated for the treatment of moderate to moderately severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited September 6, 2016).

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of his limitations. *Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel,* 245 F .3d 700, 704 (8th Cir. 2001); *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer,* 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue,* 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).

The physical RFC formulated by the ALJ is not supported by substantial evidence. The ALJ discredited the opinion of treating physician Dr. Arshad, but cited no other evidence in support of his decision. No other physician provided an opinion regarding Farrar's physical limitations. Even the opinion of the state agency consultant was provided by a non-physician. (Tr. 119.) Thus, the decision of the ALJ will be reversed and remanded.

**IV.B. Mental RFC**

Farrar also argues that the ALJ's mental RFC determination did not adequately account for his mental limitations. Specifically, Farrar contends that the ALJ did not limit Farrar's interaction with co-workers and supervisors, and the ALJ's hypothetical to the vocational expert did not include such a limitation.

When assessing Farrar's mental impairments at step three of the sequential evaluation, the

ALJ found that Farrar had "moderate difficulties" in social functioning. (Tr. 15.) He stated that Farrar's mental impairments "somewhat adversely affect his abilities to function comfortably among crowds, and to normally interact with co-workers, supervisors, or the general public." *Id.* In his RFC determination, however, the ALJ restricted Farrar to only occasional superficial interaction with the general public, away from crowds, but did not include any limitations with regard to co-workers or supervisors. (Tr. 16.)

Defendant does not dispute that such limitations were warranted, but instead argues that the ALJ's omission of these limitations was harmless because the jobs that the ALJ found Farrar could perform account for Farrar's moderate social limitations. Defendant contends that "six of the nine jobs do not require a significant amount of taking instructions from people or helping people." (Tr. 24.) The Dictionary of Occupational Titles job descriptions to which Defendant cites do not specify the amount of contact with co-workers or supervisors required. The Court cannot, therefore, conclude that the ALJ's failure to include social limitations related to co-workers and supervisors was harmless. Accordingly, the ALJ's mental RFC is not supported by substantial evidence.

## V. Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall properly weigh the opinion of treating physician Dr. Arshad; obtain additional medical evidence, if necessary, addressing Farrar's physical ability to function in the workplace; formulate a new physical RFC based on the record as a whole; and formulate a new

mental RFC that accounts for Farrar's limitations in his ability to interact with co-workers and supervisors.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2016.